UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

GODWIN BOATENG,

                *Plaintiff,*

    -against-

BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT a German
Corporation, BMW OF NORTH AMERICA, LLC,
BMW MANUFACTURING COMPANY, LLC, BMW OF
NORTH AMERICA, INC., BMW GROUP, INC.,
BMW (US) HOLDING CORP.,

                *Defendant.*

---------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**

17-CV-209(KAM)(SIL)

**KIYO A. MATSUMOTO, United States District Judge:**

    Before the Court are the parties' respective pre-trial motions in limine. (*See* ECF No. 147, Defendants' Omnibus Mot. in Lim. to Exclude Evidence; ECF No. 150, Plaintiff's Mot. in Lim. No. 1; ECF No. 153 Plaintiff's Mot. in Lim. No. 2.) For the reasons set forth below, the Court rules as follows:

- Defendants' motion to exclude evidence of "other dissimilar incidents" is GRANTED in part and DENIED in part. (*See infra* Discussion Section I.A.2.)

- Defendants' motion to exclude photographs of Plaintiff's injury is DENIED. (*See infra* Discussion Section I.B.2.)

1

- Defendants' motion to exclude evidence not produced in discovery is DENIED.  (*See infra* Discussion Section I.C.2.)

- The Court DENIES as moot Defendants' motion to exclude news media coverage in light of Plaintiff's withdrawal of the exhibits.  (*See infra* Discussion Section I.D.)

- Defendants' motion to exclude evidence of recalls unrelated to BMW's soft close door is GRANTED.  (*See infra* Discussion Section I.E.)

- Defendant's motion to exclude Plaintiff's demonstrative videos of the Subject Vehicle is GRANTED in part and DENIED in part.  (*See infra* Discussion Section I.F.)

- Plaintiff's first motion in limine to exclude evidence suggesting external forces caused Plaintiff's injury is DENIED.  (*See infra* Discussion Section II.A.2.)

- Plaintiff's second motion in limine to exclude evidence of Defendants' compliance with FMVSS No. 206 is GRANTED.  (*See infra* Discussion Section II.B.)

<u>**BACKGROUND**</u>

The court assumes familiarity with the underlying facts, but will briefly describe the facts that are relevant to these motions. The court refers to its Summary Judgment Decision for additional factual background.  *Boateng v. Bayerische Motoren Werke*

2

*Aktiengesellschaft*, No. 17-CV-209 (KAM) (SIL), 2022 WL 4357555, at *2-7 (E.D.N.Y. Sept. 20, 2022).

On July 6, 2016, Plaintiff Godwin Boateng ("Plaintiff" or "Mr. Boateng") suffered an injury to his right hand. *Id.* at *2. Plaintiff was exiting from the driver's side door of his 2013 BMW X5 ("Subject Vehicle"), on a narrow street when he moved back to avoid oncoming traffic. *Id.* Mr. Boateng's back was to the door, his right hand behind his back, and most of his fingers were resting on the exterior handle of the door as he positioned the door away from oncoming traffic. *Id.* Without warning, the door "just automatically closed" on Mr. Boateng's right thumb and amputated about half of it immediately. *Id.*

The Subject Vehicle was designed by Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), assembled by Defendant BMW Manufacturing Co., LLC ("BMW MC"), distributed by Defendant BMW of North America, LLC ("BMW NA"), and sold by non-defendant Rallye BMW dealership (the "dealership"). *Id.* In other words, BMW AG designed the Subject Vehicle and the "soft-close automatic door" (SCAD) technology. *Id.* BMW MC installs the SCAD in various models and years of BMW vehicles. *Id.* BMW NA is responsible for the distribution of completed vehicles in the United States and "deals with the SCAD in the way of replacement parts [and] quality problems." *Id.*

3

SCAD references the "soft-close automatic door" feature included in some BMW vehicles, including the Subject Vehicle's model. The SCAD is designed to assist the user of the vehicle, in providing "comfortable door closing without making noise and to close the door safely at any time." *Id.* Per Federal Motor Vehicle Safety Standard ("FMVSS") No. 206, a door must have a "fully latched position and a secondary (partially closed) latch position." *Id.* Although the secondary latch is typically present to minimize the ejection of occupants through an unintentional door opening, the secondary latch is also the location where the SCAD engages. *Id.*

## LEGAL STANDARD

### I.   Motions in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Hopkins v. Nat'l R.R. Passenger Corp.*, No. 08-CV-2965 (NGG) (RML), 2016 WL 8711718, at *2 (E.D.N.Y. Apr. 29, 2016); *see also Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (defining such motions as "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered"). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts

4

considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citation omitted). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." *Luce*, 469 U.S. at 41.

## II.  **Motions in Limine**

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402. Thus, "unless an exception applies, all '[r]elevant evidence is admissible.'" *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 402). Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Second Circuit has characterized this relevance standard as "very low." *See White*, 692 F.3d at 246 (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). Indeed, "[t]o be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable

doubt." *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010).

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). In short, Rule 403 requires "the district court [to] make a conscientious assessment of whether unfair prejudice substantially outweighs probative value" with regard to each piece of proffered evidence. *Al-Moayad*, 545 F.3d at 160 (quoting *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998) (per curium)).

<u>**DISCUSSION**</u>

### I.  **Defendants' Motion**

Defendants have filed a single omnibus motion in limine seeking to exclude: (i) evidence of other incidents that Defendants contend are "dissimilar"; (ii) photographs of Plaintiff's right thumb shortly after the accident that Defendants contend are unduly prejudicial; (iii) documents not produced by Plaintiff during discovery; (iv) media coverage of Plaintiff's injury; (v) evidence

6

of recalls that Defendants contend are "unrelated and irrelevant" to Plaintiff's accident; and (vi) videos recorded by Plaintiff and his counsel showing the door closure of the Subject Vehicle. The Court will consider each category of requested exclusions in turn.

**A.   Evidence of Other Incidents**

Defendants seek to exclude evidence of other similar incidents ("OSI" evidence) proffered by Plaintiff, arguing that Plaintiff "cannot meet his burden to establish that any of [the incidents] are substantially similar to his alleged incident." (ECF No. 147-68, Defendants' Memorandum of Law in Support of their Omnibus Motion ("Def't Mem."), at 2.) Plaintiff argues in response that (i) all of the incidents involved BMW vehicles; (ii) each vehicle had SCAD-equipped doors; (iii) all of the incidents involve a finger injury where the SCAD feature allegedly engaged; and (iv) in each case there were no warnings or safety features. (ECF No. 148, Plaintiff's Response in Opposition ("Pl. Opp."), at 6-7.) Plaintiff also stipulates that Exhibit 38 was dissimilar, as it did not involve a SCAD-equipped door. (*Id.* at 6.) Defendants argue in further support that Plaintiff has failed to make the requisite showing of substantial similarity, and that it is not clear he could do so with admissible evidence, in any event. (ECF No. 149, Defendants' Reply in Further Support ("Def't Reply"), at 2-3.) The Court respectfully rejects Defendants' narrow interpretation of what constitutes a similar incident and finds

7

that, even if much of Plaintiff's proffered evidence constitutes inadmissible hearsay, the Plaintiff's exhibits are comprised of documents produced by BMW from its corporate files which may be admissible to show notice, and in some cases causation.

### 1.    Legal Principles

"It is well established that in a product liability case such as this, OSI evidence may be admitted to prove negligence, a design defect, notice of a defect, or causation." *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 796846, at *2 (S.D.N.Y. Feb. 25, 2016) (citation omitted).  "[B]efore such evidence may be admitted for any purpose, [however,] the proponent must establish the prior accidents' relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue." *Id.* (citation omitted).  "Whether a prior accident occurred under 'substantially similar' conditions necessarily 'depends upon the underlying theory of the case, and is defined by the particular defect at issue.'" *Lidle v. Cirrus Design Corp.*, 505 F. App'x 72, 74 (2d Cir. 2012) (summary order) (quoting *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999)).

Importantly, the degree of similarity required varies depending upon the purpose for which the OSI evidence is being offered.  Where OSI evidence is offered to prove causation, courts consider multiple factors including whether "(1) the products are

8

similar; (2) the alleged defect is similar; (3) causation related
to the defect in the other incidents; and (4) exclusion of all
reasonable secondary explanations for the cause of the other
incidents." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016
WL 796846, at *2 (citations omitted).   "By contrast, the
substantial similarity standard is relaxed where OSI evidence is
offered to show notice; that is, the similarity in the
circumstances of the accidents can be considerably less than that
which is demanded when the same evidence is used for one of the
other valid purposes." *Id.* (internal quotation marks and citation
omitted).  As "this is a fact-specific inquiry that depends largely
on the theory of the underlying defect in a particular case," a
"district court is owed considerable deference in its
determination of substantial similarity." *Bitler v. A.O. Smith
Corp.*, 391 F.3d 1114, 1126 (10th Cir. 2004), *order clarified on
reh'g*, 400 F.3d 1227 (10th Cir. 2005).  If substantial similarity
is established, "[a]ny differences in the accidents . . . go to
the weight of the evidence." *Four Corners Helicopters, Inc. v.
Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992) (internal
quotation marks and citation omitted).

### 2.  Application

Defendants seek to exclude a number of exhibits on the basis
that Plaintiff has failed to meet his burden to show that they are
substantially similar.  Although Defendants offer an exhibit-by-

exhibit argument, the Court will discuss their objections broadly and will discuss individual exhibits only as needed.

Defendants are correct that OSI evidence is admissible "only upon a showing *by its proponent* that the other accidents occurred under substantially similar circumstances and conditions." (Def't Mem. at 3); *see, e.g., Lidle*, 505 F. App'x at 74 (noting the proponent must establish the relevance by showing the accident occurred "under the same or substantially similar circumstances"). However, Defendants overplay their hand by incorrectly arguing that Plaintiff "must provide expert testimony to establish that the other incidents he seeks to have admitted involved similar circumstances and were caused by a design defect related to the soft close feature." (Def't Mem. at 4.) Defendants cite *In re Mirena IUD Prod. Liab. Litig.*, 202 F. Supp. 3d 304, 312 (S.D.N.Y. 2016), as support for this contention, but they misread the opinion. *In re Mirena* stands for the prospect that "[e]xpert testimony is required in cases involving complex causation issues, including medical device cases, because without it the jury is left to speculate on medical issues with which the average person is unfamiliar." *Id.* at 311. The Court finds no support for the contention that expert testimony is a prerequisite to the admission of the evidence in question in the instant case, which involves a situation comprehensible to a layperson. *See, e.g., id.* at 312

10

("That one's bone might break if crushed in a car crash is within the ordinary experience of a lay person.")

As noted above, Plaintiff argues that the incidents he wishes to introduce occurred under "the same or substantially the same circumstances" because "(i) all of the injuries in question involve a BMW vehicle, as opposed to any other manufacturer; (ii) every BMW vehicle involved had soft close automatic doors, and none of the vehicles involve a non-SCAD equipped door; (iii) all of the incidents involve a finger injury where a BMW customer's finger became trapped and crushed when the SCAD feature engaged; and (iv) there were no warnings and safety features available." (Pl. Opp. at 6-7.) Plaintiff further argues that he may avail himself of the relaxed "notice" standard for OSI evidence, although he concedes that he is introducing the evidence to show *both* causation and notice to the Defendants. (*Id.* at 7.) Because Plaintiff does not differentiate between incidents offered for "notice" or "causation" purposes, the Court will apply the heightened "causation" standard to all as an initial matter.

As discussed previously, when using the "causation" standard for OSI evidence, in weighing admissibility, courts may consider whether "(1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents." *In re: Gen.*

*Motors LLC Ignition Switch Litig.*, 2016 WL 796846, at *2 (citation omitted).   As an initial matter, the Court finds that, to the extent the other incidents involve (i) BMW vehicles (ii) with doors utilizing the same SCAD mechanism as the Subject Vehicle (iii) closing on and injuring an individual's finger or thumb, the evidence is likely to be admissible as OSI evidence.   Nonetheless, the evidence must be *otherwise* admissible – this presents a significant hindrance to much of the evidence offered by Plaintiff, which presents "glaring hearsay problems."   *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 796846, at *4 (discussing evidence consisting of forms relaying, among other things, customer descriptions of incidents).   Specifically, to the extent Plaintiff seeks to introduce complaints maintained by BMW that were provided during discovery and were drafted by customers or notes from customer interviews BMW conducted after claims of injury, such evidence is hearsay, and admissible only through certain exceptions.   *See* Fed. R. Evid. 802.

Plaintiff quotes extensively in his opposition from the summaries of customer complaints, which he notes that he intends to offer both for "causation" and "notice" purposes.   (Pl. Opp. at 7, 15-17.)   Accordingly, the Court understands that Plaintiff is intending to use the content of the emails to prove the truth of the matter asserted – that the customers had injuries which were caused by SCAD-equipped doors.   This is inadmissible hearsay,

12

and Plaintiff offers no exception that might apply. There is no evidence that the customers in question are unavailable to testify as to their injuries, nor do any other hearsay exceptions apply. Fed. R. Evid. 803, 804. This Court finds no compelling reason to admit this statement under the residual hearsay exception, given that Plaintiff failed to provide any evidence to "corroborat[e] the statement." Fed. R. Evid. 807. Furthermore, to the extent Plaintiff seeks to offer the statements *only* for purposes of showing that BMW was on notice as to a potential design defect, the Court will admit records from Defendants' files showing the number of customer emails and the date ranges of the emails relating to customers' allegations that BMW's SCAD system resulted in injuries to the customers' thumbs or fingers.

Accordingly, the Court finds that Exhibits I-38[1], I-41, I-42, I-43, I-44, I-45, I-46, I-47, I-50, I-51, I-52, I-81 (a duplicate of I-42), I-108, I-109, I-110, I-111, I-112, I-113, I-114, I-115, and I-116, which consist primarily of internal emails or documents summarizing or quoting customer complaints, are hearsay, but may be presented in summary form as described above to show notice to Defendants.

---

[1] Plaintiff has also stipulated that Exhibit 38 "does not involve a soft close automatic door" and as such, is not admissible as OSI evidence. (Pl. Opp. at 6.)

Exhibit I-39, which Plaintiff seeks to introduce to offer BMW's statement that "[t]he decision to close the door is fully that of a human being . . . [i]f there is a hand or finger in the way, the door should not be closed," is excluded given the lack of detail about the incident.  Similarly, Exhibits I-40, I-48, I-49, I-60, I-61, I-62, and I-64 (a duplicate of I-60) do not offer sufficient detail about the incident in question to allow the Court to determine whether they involved an incident similar to Plaintiff's.  To the extent Plaintiff can offer additional evidence to show that these exhibits do, in fact, involve customer injuries allegedly caused by SCAD-equipped doors in BMW vehicles, these exhibits may be presented in summary form to show notice as with the other customer complaints discussed in the previous paragraph.

Exhibit I-54, which consists of "Internal Field Reports" showing testing of vehicles which allegedly caused finger injuries due to SCAD-equipped doors malfunctioning, may be admitted, with some exceptions.  First, any reports which do not specify a finger injury (such as the first report, ECF page 2, only alleging "soft close failure") may not be admitted unless Plaintiff can offer further support to show the reports are related to a similar incident.  Second, the "Nature of Complaint" field, which is otherwise hearsay, may be admitted only to show notice.

The Court will next address Exhibits I-99 through I-107, which consist of correspondence between Defendants and German

14

governmental authorities.[2]  Exhibit I-99, which is a certified translation of a letter from the German Federal Motor Transport Authority[3] to Defendant BMW Group regarding finger injuries caused by SCAD-equipped doors, and Exhibit I-101, BMW's reply letter, will not be excluded.  As discussed previously, the thumb injuries were alleged to be caused by SCAD-equipped BMW vehicle doors – this is sufficiently similar to be allowed to show causation and notice under OSI rules.  Defendants argue that there is not sufficient detail to show similarity in the letters, but the Court finds that the language of the letters, referring to "[i]njuries caused by door[s] with automatic closing function" is sufficient to establish similarity.  (Exhibit I-99 at 5.)  Because the letters are relevant and admissible to show causation, they are also admissible for purposes of showing notice to Defendants.  The Court notes that the statements that BMW attributes to the customers based on phone calls and other discussions of the incidents om Exhibit I-101 may be introduced only for the purpose of showing notice, as they are otherwise hearsay.

For principally the same reasons as Exhibits I-99 and I-101, the Court will not exclude I-102, which is an email chain between BMW and German authorities reporting incidents involved injuries

---

[2] The Court notes that Defendants indicated in their reply brief that they would be "amenable to withdrawing their objections to [Plaintiff's Exhibits] 99-107 contingent upon the exclusion of the remainder of the 'other incident' exhibits listed herein."  (Def't Reply at 5.)

[3] In the original German, the agency is called the Kraftfahrt-Bundesamt ("KBA").

to fingers involving BMW vehicles with SCAD-equipped doors. Likewise, Exhibits I-103 and I-104, which are further correspondence between German authorities and BMW following I-99 and I-102, shall not be excluded, for principally the same reasons as those two exhibits.  Exhibits I-103 and I-104 principally deal with questions from German authorities regarding the activation of the SCAD functionality, and whether it could activate at gaps larger than previously described by BMW.  BMW's reply is quite probative, as it offers both context for the differing measurements of where the SCAD functionality activates (diagonal dimension vs door protrusion dimension) and a statement by BMW that "[d]epending on how a finger is located in the door gap, it cannot be ruled out that the SCA would be mistakenly activated depending on the individual's anatomy and a correspondingly severe crushing." (Ex. I-104 at 7.)  Exhibits I-105, I-106, and I-107[4] each contain separate correspondence from BMW on the same measurement question with references to injuries to fingers in SCAD-equipped doors, and will not be excluded for the same reason.

In conclusion, though the Court does not adopt Defendants' narrow test for what constitutes OSI evidence in the instant case, it concurs with their argument that much of the OSI evidence proffered by Plaintiff constitutes inadmissible hearsay if offered

---

[4] The Court notes that this exhibit is incorrectly marked as "Exhibit III-21" in Defendants' moving papers.

to prove causation or provides insufficient information as to the nature of the incident as to determine similarity.  Thus, the Court finds that exhibits I-38, I-39, I-40, I-41, I-42, I-43, I-44, I-45, I-46, I-47, I-48, I-49, I-50, I-51, I-52, I-60, I-61, I-62, I-64 (a duplicate of I-60), I-81 (a duplicate of I-42), I-108, I-109, I-110, I-111, I-112, I-113, I-114, I-115, and I-116 are inadmissible, except as provided in summary form to show notice. Exhibits I-54 and I-99 through I-107 may generally be admitted with some exceptions, as described further above.

**B.  Photographs of Plaintiff's Right Thumb**

Defendants seek to exclude six photographs of Plaintiff's right thumb taken immediately after the incident, Exhibits II-1 through II-6, arguing that they are "inflammatory and unduly prejudicial while failing to be probative of any relevant matter in controversy."  (Def't Mem. at 15.)  Plaintiff argues in response that "[t]he proposed photographs were taken at the time of the injury and are entirely relevant to the central issue in the case." (Pl. Opp. at 21.)  Defendants argue in further support that admission of the photos "would allow a visceral and emotional response to graphic photographs to substitute for actual scientific analysis and associated expert opinion testimony" regarding the source of Plaintiff's injury.  (Def't Reply at 5-6.)  The Court agrees with Plaintiff and finds that the photographs may properly be admitted into evidence.

17

### 1.   Legal Principles

"Still photographs, motion pictures, and videotapes, now electronically stored digital information, once properly authenticated, are admissible in evidence if helpful to the trier of fact's understanding of a fact of consequence in the litigation." Michael H. Graham, 2 *Handbook of Fed. Evid.* § 401:7 (9th ed. 2023). "The decision whether to admit graphic or gruesome pictorial representations of [a] plaintiff's injuries lies within the discretion of the [district] Court." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 98 (S.D.N.Y. 2001) (citing *Martin v. Maint. Co.*, 588 F.2d 355, 357 (2d Cir. 1978); *Whelan v. Penn Cent. Co.,* 503 F.2d 886, 891 (2d Cir. 1974)). Relevant photographic evidence may, however, be excluded pursuant to Rule 403 if its prejudicial effect outweighs its probative value. *See Handbook of Fed. Evid.* § 401.7.

"[T]he Second Circuit has made clear that the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible." *United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) (citing *United States v. Velazquez*, 246 F.3d 204, 210-11 (2d Cir. 2001)). Evidence that may upset or disturb a jury may be admitted "if the probative value of that evidence is not substantially outweighed by the evidence's negative qualities." *Est. of Mauricio Jaquez v. Flores*, No. 10-CV-2881 (KBF), 2016 WL 1084145, at *6 (S.D.N.Y. Mar. 17, 2016).

## 2. Application

There is no question that Plaintiff will be permitted to introduce at least some of the graphic photographs in question. The photos are unquestionably unsettling – they depict Plaintiff's injury, and, as noted by Defendants, "look[] straight into the bleeding pulp of the wound." (Def't Mem at 16.) Some photos show "blood dripping down from the wound and pooling into the lines of Mr. Boateng's palm." (*Id.*) However, the photos have an important role to play in the determination of how Plaintiff suffered his injury. Specifically, the jury should be allowed to view the photos to aid in their determination of whether Plaintiff's injury was caused by the automatic door closing feature, or by the force of Plaintiff's body pressing against the door, as suggested by Defendants, and, if Defendants are found liable, the photos are relevant to damages.

The Court finds the photos to be relevant to the issue of the cause of Plaintiff's injuries, and that it is, accordingly, important for the factfinder to have access to the photos to determine whether the injury is more consistent with Plaintiff's or Defendants' theory of injury. Though the photos may be disturbing, in the absence of an alternative method to assist the jury in determining the source and extent of Plaintiff's injury, the Court finds they may be admitted. *See Est. of Mauricio Jaquez v. Flores*, 2016 WL 1084145, at *7 (admitting photograph depicting

an external bullet wound as probative of material issues relating to the shot and wound at issue). Exhibits II-1 through II-6 are therefore admissible.

**C.   Evidence Not Produced in Discovery**

Defendants seek to exclude four additional photographs of Plaintiff's thumb taken just over a month after the injury, as well as recent photographs comparing Plaintiff's injured thumb with his other, non-injured thumb, on the basis that they were not produced in discovery. (Def't Mem. at 17.) Defendants also seek to exclude for the same reason Plaintiff's 2015, 2018, 2019, 2020, 2021, and 2022 tax returns, and a 2012 contract showing Plaintiff's hourly rate of pay. (*Id.* at 17-18.) Plaintiff argues that the evidence is relevant, and that the prejudice of exclusion would outweigh the prejudice of nondisclosure during discovery. (Pl. Opp. at 25-27.) Defendants argue in further support that their position is supported by the Federal Rules of Civil Procedure and the Court's discovery scheduling orders. (Def't Reply at 6-7.) The Court finds that Plaintiff's failure to provide the tax returns and photos during discovery was substantially justified or harmless, and that Defendants have failed to demonstrate that exclusion is a proper remedy to Plaintiff's failure to produce the exhibits in question.

### 1.   Legal Principles

Rule 37(c)(1) describes the available remedies when a party fails to provide information pursuant to Rule 26(a) or (e):

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(C).  Rule 26(a) governs, amongst other required disclosures, the parties' mandatory initial disclosures, including documents bearing on computation of damages and documents that may be used to support claims.  Fed. R. Civ. P. 26(a).  Rule 26(e) provides, in relevant part:

> A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response: . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1).  "The moving party bears the burden of showing that its adversary failed timely to disclose information required by Rule 26." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007).  "To meet this burden, the moving party must establish '(1) that the party having control over the evidence had an obligation to timely produce it; (2) that

21

the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'"  *Id.* (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

"The imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion." *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (citation omitted).  "[R]efusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules." *Id.* (citation omitted). "Despite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 289 (S.D.N.Y. 2010) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 584, 297 (2d Cir. 2006)).

### 2.  Application

Defendants have failed to carry their burden of establishing that preclusion is warranted under Rule 37(c).  As an initial matter, the Court finds that Defendants are correct that the exhibits in question should have been produced.  Defendants

requested "all photographs . . . depicting the alleged occurrence [or] showing the alleged damages sustained by Plaintiff." (Def't Ex. III-A at 8.)   The photographs of Plaintiff's thumb would clearly fit into the document request as it is written, and the Court does not find the language of the request confusing or otherwise written in a way that would excuse Plaintiff's compliance. As to the tax records, Defendants requested "all documents supporting any claimed expenses, consequential or incidental damages or losses." (*Id.* at 9.)   Although the tax returns were not explicitly requested by Defendants, the Court finds the Defendants requested and Plaintiff provided authorizations for Plaintiff's tax returns for five years prior to the incident up to any including the present time.   Plaintiff states that he provided authorizations for his tax returns on multiple occasions. (Pl. Opp. at 26-27.)   That being said, Plaintiff's failure to produce the actual tax returns during discovery does not end the Court's inquiry.

In determining whether to order the "drastic remedy" of refusing to admit evidence is appropriate, the Court looks to whether Plaintiff's failure to disclose "represents a flagrant bad faith and callous disregard of the rules." *Johnson Elec. N. Am. Inc.*, 77 F. Supp. 2d at 458.   The Court does not find any such bad faith or callous disregard of the rules to be present. As to the tax returns, Plaintiff felt that he provided the appropriate IRS

authorization for Defendant to acquire them, and there was no need to produce the tax returns separately. (*See* Pl. Opp. at 26-27.) Regarding the photographs, Plaintiff asserts that the photos are relevant to showing the condition of Plaintiff's thumb months and one year after the incident, but offers no excuse for the failure to produce them beyond stating that they were "produced immediately after they were found." (Pl. Opp. at 25.) The Court does not wish to excuse Plaintiff's failure to meet his discovery obligations, but it is far from clear that the failures were made with the requisite "culpable state of mind." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. at 125. As a result, the Court does not find preclusion to be an appropriate remedy for Plaintiff's failure to produce the documents during discovery.

   **D.   News Media Exhibits**

   Defendants seek to exclude two media exhibits regarding Plaintiff's injuries – a New York Post article entitled "My $70K BMW cut off my thumb" and an ABC News video entitled "Long Island man sues BMW after car's self-closing door severs thumb". (Def't Mem. at 18.) Defendants argue that the media evidence constitutes inadmissible hearsay, would be cumulative and redundant to Plaintiff's own testimony, and would be overly prejudicial. (*Id.* at 19.) Plaintiff agreed in his opposition to withdraw both exhibits. (Pl. Opp. at 28.) Defendants request an order precluding the media evidence in their reply. (Def't Reply at 7.)

24

The Court does not find it necessary to enter an order excluding the evidence, given Plaintiff's voluntary decision to withdraw the exhibits.

### E.   Evidence of Other Recalls

Defendants seek to exclude two exhibits on the basis that they "concern a recall of a different vehicle model for an unrelated issue." (Def't Mem. at 19.) Plaintiff argues in response that the evidence of the recalls is relevant in considering the design defect claims. (Pl. Opp. at 29–32.) Defendants argue in further support that Plaintiff's position is overly broad as it would mean that "*any* recall relating to the soft close mechanism should be considered by the jury in deciding whether the design of that feature is defective." (Def't Reply at 7.) The Court agrees with Defendants and finds that the exhibits in question are not relevant, and as such, are not admissible.

"[E]vidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (quoting Fed. R. Evid. 401). Here, the Court finds that Plaintiff has failed to show that the evidence surrounding the door recalls is relevant to the instant case. Specifically, the evidence of recalls that Plaintiff seeks to introduce relates to instances where "a door failed to remain

closed" because the "door release cam permanently opens the release
lever [and the] door does not latch."   (Ex. V-55 at 2, 4.)
Plaintiff has not alleged that such a defect was present on his
vehicle, or that such a defect contributed to his injury.
Defendants correctly point out that "[t]here is no claim in this
litigation that Mr. Boateng was injured due to his driver's door
*opening*."  (Def't Mem. at 22.)  As such, the Court does not find
the evidence to be relevant or admissible.

To the extent Plaintiff seeks to introduce the evidence in
support of a broader contention that BMW's vehicles contained
defects, thus making it more likely that his own SCAD-equipped
door was defective and caused his injury, the Court finds such
evidence would be more prejudicial than probative.  Any use of
evidence in this manner would "confuse the jury as to the true
issue" in the case, as pointed out by Defendants.  (Def't Mem. at
22.)  Finally, the Court reserves ruling on any attorney-client
privilege asserted by Defendants regarding the recalls because the
evidence will be precluded because it is irrelevant.

**F.  Plaintiff's Demonstrative Videos**

Defendants seek to exclude four demonstrative videos of the
Subject Vehicle created by Plaintiff.  (Def't Mem. at 22-23.)
Defendants argue that the videos constitute non-expert lay witness
testimony which is cumulative of Plaintiff's expert evidence and
includes audio commentary which is hearsay.  (*Id.* at 23-24.)

26

Plaintiff argues that the evidence is a permissible way to "show the jury exactly how the accident happened, rather than Mr. Boateng doing so in court holding an imaginary BMW X5 vehicle door." (Pl. Opp. at 33.) The Court finds that, to the extent Plaintiff's videos attempt to show "testing" of the SCAD-equipped door, they are precluded as lay-expert testimony, but that the videos of Plaintiff showing how he held the door, showing how the SCAD engaged, and showing the scratch on the door may be admitted.

Pursuant to Fed. R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Here, it is clear that Exhibits VI-124 and VI-125 go beyond the bounds of acceptable lay witness testimony and veer into terrain reserved for expert witnesses. This is precisely because Plaintiff plans to introduce expert testimony from Dr. Pugh showing his own testing of the Subject Vehicle. In this case, Plaintiff cannot have it both ways – he cannot offer

both expert and non-expert testing of the same type on the same door.  For this reason, the Court finds that Exhibits VI-124 and VI-125 are inadmissible.

The Court does not find that Exhibits VI-126 and VI-127 constitute improper lay-expert testimony, however.  These videos show Plaintiff "exiting the [S]ubject [V]ehicle and holding the driver's side door in the same manner as he did when he was injured on July 6, 2016" along with the "noticeable scratch mark indented" in the Subject Vehicle after the incident.  (Pl. Opp. at 33.)  As previously discussed, photographs and videotapes are "admissible in evidence if helpful to the trier of fact's understanding of a fact of consequence in the litigation."  Michael H. Graham, 2 *Handbook of Fed. Evid.* § 401:7 (9th ed. 2023).  The two videos in question concern facts relevant to the central issue in the case – how Plaintiff was positioned in relation to the door when it closed, and the force with which the door closed on his thumb- and as such, constitute proper evidence that provides relevant information.  The Court adopts Plaintiff's suggestion that the audio be redacted from the exhibits prior to trial, so as to avoid any potential hearsay problems, however Plaintiff may authenticate the videos to explain the context.  Accordingly, Exhibits VI-126 and VI-127 may be introduced with the audio removed, and Exhibits VI-124 and VI-125 are deemed inadmissible.

## II.  Plaintiff's Motions

Plaintiff has filed two separate motions in limine seeking to exclude: (i) any suggestions at trial that Mr. Boateng's injuries were caused by his closing the door on his own thumb alone rather than through the activation of the SCAD functionality; and (ii) evidence that BMW is in compliance with Federal Motor Vehicle Safety Standard ("FMVSS") No. 206, regarding a door's primary door latch system.  The Court will consider each category of exclusions in turn.

### A.  Evidence of External Forces

Plaintiff seeks to "exclude any inferences at trial by the Defendants that Godwin Boateng's injuries were caused as the result of closing the door on his own thumb rather than through the activation of Soft-Close Automatic Doors ('SCAD')." (ECF No. 150, Plaintiff's Memorandum of Law in Support of Motion in Limine #1 ("Pl Mem. No. 1"), at 5.)  Defendants opposition asserts that the motion seeks "seeks to eliminate one of Defendants' primary defenses and their experts' theory of how the accident probably occurred."  (ECF No. 151, Defendants' Response in Opposition ("Def't Opp."), at 2.)  Plaintiff argues in further support that Defendants' theory "would be confusing and wholly irrelevant" to the jury.  (ECF No. 152, Plaintiff's Reply in Further Support of Motion in Limine No. 1 ("Pl. Reply No. 1"), at 3.)  The Court finds Plaintiff's request is overly broad and would unnecessarily

intrude on the factfinder's role in the instant case to weigh and analyze the parties' competing theories of causation of Plaintiff's injury. As such, Plaintiff's motion is denied.

### 1.   Legal Principles

"Evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence' and if 'the fact is of consequence in determining the action.'" *United States v. Monsalvatge*, 850 F.3d 483, 494 (2d Cir. 2017) (quoting Fed. R. Evid. 401). "Evidence need not be conclusive in order to be relevant." *Id.* (quoting *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003)). "A district court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.* (quoting Fed. R. Evid. 403). In reviewing a district court's Rule 403 rulings, the Second Circuit "generally maximize[s] the evidence's probative value and minimize[s] its prejudicial value." *Id.* (internal quotation marks and citation omitted).

Separately, under Fed. R. Evid. 702, expert testimony is admissible where: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.* "To determine whether a proposed expert's testimony passes muster under Rule 702, this Court must inquire into: (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based on reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)).

Under Fed. R. Evid. 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." *Id.* The Second Circuit has held that "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Dukagjini*, 326 F.3d 45, 57 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

## 2.  Application

Plaintiff argues that evidence of injuries from non-SCAD equipped doors is irrelevant, misleading, and "will cause a great

deal of confusion for the jury at trial." (Pl. Mem. No. 1 at 5.) Furthermore, Plaintiff argues that certain reports upon which Defendants' experts may rely "lack[] a sufficient scientific basis" and should be precluded. (*Id.*) The Court is not persuaded by Plaintiff's arguments, which appear to attempt to foreclose Defendants from offering an alternative theory for the injury.

As a starting point, the Court finds that evidence offered by Defendants which would suggest Plaintiff's injury was caused by the force with which his own body closed the door, as opposed to the SCAD mechanism, is relevant to the instant case. Such evidence would be relevant to whether a product defect caused Plaintiff's injury, a central issue in the case. Thus, just as this Court found it appropriate to allow evidence of other similar incidents involving SCAD-equipped doors, it would be inappropriate at this juncture to foreclose Defendants from offering evidence suggesting Plaintiff's incident would be possible on a non-SCAD-equipped door. The Court is not persuaded that such evidence would confuse a jury, which could understand the competing theories of the accident being advanced by the two sides. Ultimately, the Court agrees with Defendants that even if "Plaintiff's case may be harmed by reference to the evidence at issue . . . such harm is not the 'unfair' prejudice that Federal Rule of Evidence 403 is intended to protect against." *Spencer v. Int'l Shoppes, Inc.*, No. 06-CV-2637 (AKT), 2013 WL 685453, at *3 (E.D.N.Y. Feb. 25, 2013).

Therefore, the Court declines to provide the broad exclusion sought by Plaintiff.

The Court is also not persuaded by Plaintiff's arguments that certain portions of Defendants' expert witness testimony should be excluded.  Plaintiff argues that NHTSA data regarding reports of car door injuries should be excluded from expert testimony as it provides "insufficient and unreliable evidence of causation." (Pl. Mem. No. 1 at 8.)  However, the case law cited by Plaintiff primarily deals with causation in a medical or epidemiological context (specifically medical "case reports"), far removed from the present situation.  Should Defendants' expert opine that SCAD-equipped doors have contributed to a gradual decrease in door-related injuries over time, Plaintiff is free to offer an alternative theory, or question the reliability of the data, as he did during prior depositions.  (*Id.* at 6.)  Ultimately, just as Plaintiff will be allowed to advance his own theory of how the injury was caused, including through video demonstrations and expert testimony, Defendants will be allowed to offer their own theory along with admissible evidence in support.[5]

---

[5] The Court notes that this issue was discussed in the earlier ruling declining to grant summary judgment for Defendants on the design defect claim, and the Court concluded that "[t]he factual question of whether and how Mr. Boateng may have moved the door of the Subject Vehicle from the outer latch to the secondary latch, thereby activating the SCAD, remains. The Court finds that these factual questions are best reserved for a jury." *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-209 (KAM) (SIL), 2022 WL 4357555, at *15 (E.D.N.Y. Sept. 20, 2022).

**B.   Evidence of Compliance with FMVSS No. 206**

Plaintiff seeks in his second motion in limine to exclude "documents associated with Federal Motor Vehicle Safety Standard No. 206 ('FMVSS No. 206')" on the grounds that they are irrelevant, as "[t]he purpose of Standard 206 is to minimize the likelihood of occupants being thrown from a vehicle as a result of an impact." (ECF No. 153, Plaintiff's Memorandum of Law in Support of Motion in Limine #2 ("Pl Mem. No. 2"), at 4-5.)   Defendants argue in response that "[i]n a design case, such standards are typically admissible to show compliance of the design to the industry and to the state of the art, both of which are factors that juries may consider."  (Def't Opp. at 7.)  Plaintiff argues in further support that "SCAD is <u>never</u> discussed in FMVSS No. 206" and that although the standard applies to the Subject Vehicle, that is "equally true for the other 153 FMVSS standards."  (ECF No. 155, Plaintiff's Reply in Further Support of Motion in Limine No. 2 ("Pl. Reply No. 2"), at 3.)  The Court agrees with Plaintiff that evidence of compliance with FMVSS No. 206 does not appear to be relevant in determining any fact material to a claim or defense in this action, and as such, is not admissible.  However, the Court may modify this ruling if Defendants' compliance with Federal Motor Vehicle Safety Standards is put into issue by Plaintiff.

FMVSS No. 206, codified at 49 C.F.R. § 571.206, "specifies requirements for vehicle door locks and door retention components,

including latches, hinges, and other supporting means, to minimize the likelihood of occupants being ejected from a vehicle as a result of impact." *Id.* As noted by Plaintiff, no references to "automatic" door closing systems are included in the standard. Instead, the standard is primarily concerned with the load and force that a door's primary and auxiliary door latch systems can sustain prior to separating. *Id.* As explained in the "Scope and Purpose" section of the standard noted above, this is to minimize the chance of vehicle occupants being "ejected from a vehicle as a result of impact." The Court finds no special relevance to BMW's asserted compliance with this standard for the instant action, which concerns an injury resulting from the *closure* of a SCAD-equipped door. For the same reason that the Court declined to allow Plaintiff to introduce evidence of unrelated recalls, the Court similarly declines to allow Defendants to introduce evidence of compliance with unrelated standards.

The Court does not find applicable the case law Defendants cites suggesting that "compliance with regulatory requirements under 49 CFR § 571 [is] relevant." *See, e.g., Contini v. Hyundai Motor Co.*, 840 F. Supp. 22, 23 (S.D.N.Y. 1993). In *Contini*, a seat belt failed to restrain an occupant of the front seat, directly implicating the standard for seat belt assemblies which "were required to be designed to be capable of restraining a passenger." *Id.* at 24. Similarly, *Murphy v. Nissan Motor Corp.*

*in U.S.A.*, 650 F. Supp. 922 (E.D.N.Y. 1987), dealt with a failure of a seatbelt system while a passenger's seat was fully reclined, directly implicating "safety standard relating to passenger restraints." *Id.* at 924. The Court finds the cases to be distinguishable from the instant case, in which no standard appears to be directly related to the SCAD defect alleged by Plaintiff.

This ruling may be revisited if Plaintiff places into issue Defendants' compliance with the specific statutory or regulatory requirements at issue in Plaintiff's motion. *See, e.g., United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (discussing the doctrine of "curative admissibility"). The Court understands Plaintiff's position to be that "no federal standard [is] applicable to an automatic closing door," and bases this ruling on that position, in part. Thus, although evidence of compliance with FMVSS No. 206 is deemed irrelevant and inadmissible, the Court's ruling may subsequently change based on the arguments advanced by Plaintiff at trial.

## CONCLUSION

For the reasons stated above, the Court finds that:

- Defendants' motion to exclude evidence of "other dissimilar incidents" is GRANTED in part and DENIED in part. (*See supra* Discussion Section I.A.2.) Exhibits I-38, I-39, I-40, I-41, I-42, I-43, I-44, I-45, I-46, I-47, I-48, I-49, I-50, I-51, I-52, I-60, I-61, I-62, I-64 (a duplicate of I-60), I-81 (a

36

duplicate of I-42), I-108, I-109, I-110, I-111, I-112, I-113, I-114, I-115, and I-116 are inadmissible, except in summary form, as discussed *supra*.  Exhibits I-54 and I-99 through I-107 may be admitted subject to the limitations described further *supra*.

- Defendants' motion to exclude photographs of Plaintiff's injury is DENIED.  (*See supra* Discussion Section I.B.2.) Exhibits II-1 through II-6 are admissible.

- Defendants' motion to exclude evidence not produced in discovery is DENIED.  (*See supra* Discussion Section I.C.2.) Exhibits III-7 through III-11 and III-21 through III-29 are admissible.

- The Court DENIES as moot Defendants' motion to exclude news media coverage in light of Plaintiff's withdrawal of the exhibits.  (*See supra* Discussion Section I.D.)

- Defendants' motion to exclude evidence of unrelated recalls is GRANTED.  (*See supra* Discussion Section I.E.)  Exhibits V-55 and V-66 are deemed inadmissible.

- Defendant's motion to exclude Plaintiff's demonstrative videos of the Subject Vehicle is GRANTED in part and DENIED in part.  (*See supra* Discussion Section I.F.)  Exhibits VI-124 and VI-125 are deemed inadmissible.  Exhibits VI-126 and VI-127 may be admitted in modified form with the audio

removed, however, Plaintiff may lay a foundation for the exhibits.

- Plaintiff's first motion in limine to exclude evidence suggesting external forces caused Plaintiff's injury is DENIED. (*See supra* Discussion Section II.A.2.)

- Plaintiff's second motion in limine to exclude evidence of Defendants' compliance with FMVSS No. 206 is GRANTED. (*See supra* Discussion Section II.B.)

**SO ORDERED**

Dated:   April 8, 2024
         Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

38